**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RACHEL RODIN,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **No.** |
| **v.** | : | |
| | : | |
| **ARISTOCRAT TECHNOLOGIES, INC.,** | : | |
| **Defendant.** | : | **JURY TRIAL DEMANDED** |

# COMPLAINT

1. Enacted in 1978 as an amendment to Title VII, the Pregnancy Discrimination Act ("PDA") makes it unlawful for an employer to discriminate against a woman on the basis of her "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

2. Forty-five years later, on June 27, 2023, the Pregnant Workers Fairness Act ("PWFA") was enacted as a further amendment to Title VII. It requires employers to provide "reasonable accommodations" to women due to their "pregnancy, childbirth, or related conditions," and prohibits discrimination or retaliation against them for requesting those accommodations. 42 U.S.C. § 2000gg.

3. At the state level, in 2014, nine years before the passage of the PWFA, New Jersey enacted its own Pregnant Workers Fairness Act, N.J.S.A. 10:5-12(s), as an amendment to its Law Against Discrimination ("LAD"). N.J.S.A. 10:5-12(s). Under the amendment, women who recently gave birth are entitled to a reasonable accommodation, including remote

work at home, as a means to facilitate their ability to continuing working and to care for their newborn babies.

4. Violations of these three statutes entitle women to compensatory damages, punitive damages, and recovery of their attorneys' fees and costs, among other remedies.

5. Another federal statute, the Family and Medical Leave Act of 1993 ("FMLA"), prohibits employers from discriminating or retaliating against employees who use protected medical leave for family-related reasons. 29 U.S.C. § 2615(a)(2). Violations of the FMLA entitle victims to recover back pay, front pay, liquidated damages, and counsel fees and costs, among other remedies. 29 U.S.C. § 2617(a)(1)(A).

6. All four of these statutes coalesce here and provide the basis for plaintiff Rachel Rodin's lawsuit against Aristocrat Technologies, Inc. ("Aristocrat").

7. Ms. Rodin worked for Aristocrat, a global gaming and technology company, as a fully-remote employee for nearly four years.

8. Her skills, performance and dedication were beyond reproach; in fact, throughout her employment Ms. Rodin was repeatedly praised for her performance.

9. In December 2025 Ms. Rodin gave birth to her first child. She was out of work on FMLA leave and an additional two weeks of paid time off with an approved return to work date of March 18, 2026.

10. Due to her husband's new job in California, Ms. Rodin, her husband and infant son relocated to Los Angeles in March 2026 from their home in southern New Jersey.

11. Ms. Rodin notified her manager and Aristocrat's Human Resources department of her relocation.

12. Despite that notice, Aristocrat refused to allow Ms. Rodin to continue working remotely in Los Angeles and gave her the Hobson's choice to either move back to New Jersey and work remotely there, or move to Las Vegas, Nevada to work in person at the company's corporate office.

13. As a new mother, just beginning a new life in Los Angeles with her husband and infant son, Ms. Rodin was unable to relocate to either location. So she declined Aristocrat's demand.

14. Aristocrat then gave her another Hobson's choice: either to quit her job or be fired for insubordination.

15. Ms. Rodin refused to quit and again requested to continue working remotely for Aristocrat out of her new home in Los Angeles.

16. Aristocrat again rebuffed her request and fired her for insubordination on March 19, 2026 -- the day after her scheduled return to work.

17. For these willful, reckless and intentional acts, Ms. Rodin now seeks the full panoply of legal and equitable remedies available to her under the PDA, the PWFA, the LAD and the FMLA.

## JURISDICTION

18. The Court has subject matter jurisdiction over plaintiff Rodin's PDA and PWFA claims -- each of which are amendments to Title VII of the 1964 Civil Rights Act -- pursuant to 42 U.S.C. §2000e-5(f)(3).

19. The Court has subject matter jurisdiction over plaintiff's Rodin's FMLA claim pursuant to 29 U.S.C. § 2617(a)(2).

20. Pursuant to 28 U.S.C. § 1367(a), the Court also has supplemental jurisdiction over plaintiff Rodin's claim that Aristocrat violated her rights under the New Jersey Pregnant Workers Fairness Act.

## VENUE

21. Venue over plaintiff's PDA and PWFA claims is properly laid in this judicial district pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3). Venue over plaintiff's FMLA claim and her New Jersey Pregnant Workers Fairness Act Claim is conferred by 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

22. Ms. Rodin currently lives with her husband and son at 4513 Tyrone Avenue, Sherman Oaks, California 91423. Throughout the course of her employment with Aristocrat, Ms. Rodin worked remotely for Aristocrat out of her home in Philadelphia, Pennsylvania and, subsequently, for a brief period of time, out of her home in Moorestown, New Jersey.

23. Defendant Aristocrat Technologies, Inc. is a corporation that maintains its United States corporate office at 10220 Aristocrat Way, Las Vegas, Nevada 89145. Aristocrat is a subsidiary of Aristocrat Leisure Limited, an Australian corporation. Here in the United States, Aristocrat regularly conducts business through the sale, leasing and operation of gaming machines in the casino and lottery markets. As relevant here, Aristocrat has regularly and consistently conducted business in the Commonwealth of Pennsylvania, specifically Philadelphia, as well as in the State of New Jersey -- the locations at which plaintiff Rodin worked remotely throughout the course of her employment with Aristocrat.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. Plaintiff Rodin filed a timely Charge of Discrimination against Aristocrat with the Philadelphia office of the United States Equal Employment Opportunity Commission ("EEOC") on June 5, 2026, Charge No. 530-2026-07101. Her charge alleged claims that, by terminating her employment, Aristocrat violated her rights under the PDA and the PWFA.

25. On August 6, 2026, the Philadelphia office of the EEOC issued plaintiff Rodin a Notice of Right to Sue letter authorizing her to file suit on her PDA and PWFA claims against Aristocrat.

26. This lawsuit has been timely filed within the suit-filing provisions of the EEOC's 90-day letter.

27. There is no administrative exhaustion requirement for the filing of suit under either the FMLA or the New Jersey Pregnant Workers Fairness Act. This suit is timely filed within the terms of both these statutes.

## ADDITIONAL FACTUAL AVERMENTS

28. Ms. Rodin was hired as a fully-remote employee of Aristocrat in May 2022. She served in the position of Senior Operations Manager in the Consumer and Product Insights team of Aristocrat.

29. Nearly all the members of Ms. Rodin's team have worked and continue to work full-time remotely at locations all over the country. That includes the team's manager, Jeff Resnick, who worked and continues to work remotely from his home in San Francisco, California.

30. For members of Mr. Resnick's team, there was no need, nor did Aristocrat ever express a need or requirement, that team members could not work remotely elsewhere for the company.

31. For nearly the entirety of her employment with Aristocrat, Ms. Rodin worked remotely out of her home in Philadelphia.

32. In September 2025, Ms. Rodin and her husband moved to Moorestown, New Jersey where Ms. Rodin continued to work remotely on a full-time basis for Aristocrat.

33. Aristocrat did not impose any requirement on Ms. Rodin's relocation to Moorestown, nor did it or her manager, Mr. Resnick, require or ask her to complete any forms or paperwork to continue working remotely at her new home in Moorestown.

34. Nor did Ms. Rodin's relocation have any impact on Ms. Rodin's job duties or her job performance.

35. In fact, throughout the course of her employment with Aristocrat, Ms. Rodin consistently met or exceeded all the performance goals set for her by Mr. Resnick. As a result, she typically received "strong year" performance ratings from Mr. Resnick -- ratings given to very few of Aristocrat's employees.

36. On December 10, 2025 Ms. Rodin gave birth to her first child, a baby boy.

37. Ms. Rodin promptly informed Mr. Resnick and Aristocrat's Human Resources department of his birth.

38. From December 10, 2025 until March 4, 2026, Ms. Rodin took an approved FMLA leave to care for her infant son.

39. In addition, Aristocrat approved her use of two additional weeks of PTO which extended her leave to March 17, 2026.

40. Ms. Rodin was scheduled to return to work on March 18, 2026.

41. On February 13, 2026 Ms. Rodin informed Mr. Resnick that she, her husband and infant son were moving on March 4, 2026 to Los Angeles where her husband was beginning a new job.

42. Mr. Resnick had no problem with the move nor did he inform Ms. Rodin that she needed to complete any forms or paperwork in order to continue working remotely for Aristocrat in her new home in Los Angeles. He said he would notify Aristocrat's HR Department that she was moving to Los Angeles where she would continue working remotely and reporting to him, as before.

43. Two weeks passed without any further follow up from Aristocrat.

44. On February 25, 2026 Aristocrat's Human Resources Department sent an e-mail to Ms. Rodin stating she needed to submit a relocation request in order to continue working remotely in Los Angeles.

45. That was an unusual request for at least two reasons: first, most of the members of Mr. Resnick's team worked remotely, including Mr. Resnick, at their homes across the United States and Europe.

46. Second, Aristocrat never communicated to employees that it had any policies that precluded remote employees from relocating their homes from one remote location to another remote one. In fact, when Ms. Rodin herself moved from Philadelphia to Moorestown, New Jersey in September 2025, Aristocrat never questioned her about it, nor did it require her to complete a relocation form for approval.

47. Despite the unusualness of its request, Ms. Rodin submitted the relocation form to Aristocrat's HR Department as requested.

48. In response, Aristocrat's HR Department informed Ms. Rodin that she could not work remotely in Los Angeles. Instead, it told her she had to quit her job.

49. Ms. Rodin refused to quit and informed Aristocrat's HR Department she had been looking forward to resuming her job after her maternity leave ended on the same remote basis as she had prior to her maternity leave.

50. Aristocrat then presented Ms. Rodin with two impossible choices: either move back to New Jersey where she could continue working remotely, or relocate to Las Vegas and work there at the company's home office.

51. Neither choice was feasible. Ms. Rodin could no more up and leave Los Angeles to which she had just moved on March 4, 2026 -- nor could she, her husband and infant son pick up their lives and move to Las Vegas, or back to Moorestown, New Jersey.

52. Displeased with her response and without engaging her in any interactive process, Aristocrat's HR Department again told Ms. Rodin to quit her job -- a choice she could not and would not make. So again, she refused to abide by Aristocrat's unconscionable choice.

53. To that, Aristocrat fired Ms. Rodin for "insubordination."

54. It conveyed that decision to her on March 19, 2026 -- the day after she returned from maternity leave and began working remotely for it out of her new home in Los Angeles.

55. Even though Aristocrat knew it was presenting Ms. Rodin with an impossible choice, it told her she had been a high-performing employee who would be welcomed back to work for it -- but only if she did so on its terms.

## CLAIMS FOR RELIEF

## COUNT I:

## DEFENDANT'S VIOLATION OF THE PDA

56. Ms. Rodin repeats and incorporates by reference all the allegations set out in paragraphs 1 through 55 of the Complaint.

57. Under the PDA, women have the right to bear and raise children without the fear that their employers will discriminate and/or retaliate against them for doing so.

58. Aware of the PDA legal requirements, Aristocrat ignored them.

59. Instead, it fired Ms. Rodin for "insubordination" because she refused to abide by its impossible and incomprehensible demand: either quit your job or move back to New Jersey or relocate to our home office in Las Vegas.

60. That demand was made in the face of, and because of, her status as a new mother with an infant son to support and care for, and despite Aristocrat's knowledge that (a) Ms. Rodin had just completed her maternity leave; (b) had recently relocated from Philadelphia to Moorestown without a word of complaint, objection or request by Aristocrat; and (c) without any written or communicated policy by Aristocrat that remote employees needed prior approval before relocating their homes in order to continue performing their remote jobs.

61. As a direct and proximate result of Aristocrat's violation of Ms. Rodin's rights under the PDA, she has suffered and will continue to suffer a loss of earnings and employee benefits to which she is entitled.

62. As a further direct and proximate result of Aristocrat's violation of the PDA, Ms. Rodin has suffered and will continue to suffer physical pain and suffering, humiliation, harm to her reputation and loss of enjoyment of life's pleasures.

63. Aristocrat's decision to fire Ms. Rodin for insubordination was a willful, intentional and reckless violation of her rights under the PDA.

**COUNT II:**

**DEFENDANT'S VIOLATION OF THE PWFA**

64. Ms. Rodin repeats and incorporates by reference all the allegations set out in paragraphs 1 through 63 of the Complaint.

65. Apart from and in addition to violating Ms. Rodin's rights under the PDA, Aristocrat also violated her rights under the PWFA.

66. Under that statute, Aristocrat was required to provide her with "reasonable accommodation" and prohibits it from discriminating or retaliating against her because she requested and required a reasonable workplace accommodation, *i.e.*, continuing to work remotely out of her new home in Los Angeles.

67. Aristocrat breached and violated that obligation by not engaging her in the interactive process the law required and by refusing to provide Ms. Rodin with continued remote employment in Los Angeles. Instead, it imposed on her as a new mother an unlawful Hobson's choice, to wit, either quitting her job or relocating back to New Jersey as a remote employee or relocating to its corporate office in Las Vegas.

68. Aristocrat knew, or should have known, these were unlawful conditions that stifled Ms. Rodin's rights under the PWFA.

69. As a direct and proximate result of Aristocrat's 's violation of Ms. Rodin's rights under the PWFA, she has suffered and will continue to suffer a loss of earnings and employee benefits to which she is entitled.

70. As a further direct and proximate result of Aristocrat's violation of the PWFA, Ms. Rodin suffered and will continue to suffer physical pain and suffering, humiliation, harm to her reputation and loss of enjoyment of life's pleasures.

71. Aristocrat's decision to fire Ms. Rodin for insubordination was a willful, intentional and reckless violation of her rights under the PWFA.

## COUNT III:

## DEFENDANT'S VIOLATION OF THE NEW JERSEY PWFA

72. Ms. Rodin repeats and incorporates by reference all the allegations set out in paragraphs 1 through 71 of the Complaint.

73. By firing Ms. Rodin for insubordination, Aristocrat violated her rights under the LAD, specifically her rights under New Jersey's Pregnant Workers Fairness Act.

74. Like the PWFA, the New Jersey PWFA required Aristocrat to provide Ms. Rodin with "reasonable accommodations" and prohibits it from discriminating or retaliating against Ms. Rodin because she requested a reasonable workplace accommodation, *i.e.*, the right to continue working remotely from her new home in Los Angeles. That accommodation was not

just reasonable. It also was necessary in order to afford her the unfettered opportunity to care for and support her newborn infant son while continuing her stellar work on behalf of Aristocrat.

75. As a direct and proximate result of Aristocrat's 's violation of Ms. Rodin's rights under New Jersey's PWFA, she has suffered and will continue to suffer a loss of earnings and employee benefits to which she is entitled.

76. As a further direct and proximate result of Aristocrat's violation of New Jersey's PWFA, Ms. Rodin has suffered and will continue to suffer physical pain and suffering, humiliation, harm to her reputation and loss of enjoyment of life's pleasures.

77. Aristocrat's decision to fire Ms. Rodin for insubordination was a willful, intentional and reckless violation of her rights under New Jersey's PWFA.

**COUNT IV:**

**DEFENDANT'S VIOLATION OF THE FMLA**

78. Ms. Rodin repeats and incorporates by reference all the allegations set out in paragraphs 1 through 77 of the Complaint.

79. Defendant Aristocrat was aware that Ms. Rodin was out of work on 12 weeks of FMLA leave in order to care for and support her infant son.

80. It was also aware, and had been since the beginning of her employment, that Ms. Rodin always worked as a full-time remote employee.

81. Despite that knowledge, Aristocrat penalized and retaliated against Ms. Rodin in reprisal for her taking needed childcare leave by terminating her employment and imposing on her an unthinkable choice: quit or relocate back to New Jersey or move to Las Vegas.

82. Those conditions were undertaken in knowing violation of Ms. Rodin's rights to be free of retaliation or on reprisal for the exercise of her rights under the FMLA.

83. As a direct and proximate results of Aristocrat's violation of Ms. Rodin's rights under FMLA, Ms. Rodin has suffered and will continue to suffer a loss of earnings and employee benefits to which she is entitled.

84. Aristocrat terminated Ms. Rodin's employment in willful, intentional and reckless violation of her rights by the FMLA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rodin respectfully requests the Court to enter judgment in her favor and against Defendant Aristocrat and to include in it the following relief:

a. An award of back pay;

b. An award of front pay;

c. An award of compensatory damages under the PDA, PWFA and New Jersey's PWFA;

d. An award of liquidated damages under the FMLA;

e. An award of punitive damages under the New Jersey PWFA, the PDA and the PWFA;

f. An award of reasonable counsel fees and costs; and

g. Such other legal and equitable relief as may be just and proper under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiff Rachel Rodin demands a jury trial on all the legal claims set forth in her Complaint.

**RAYNES & LAWN**

By: Harold I. Goodman

Harold I. Goodman, Esquire
2400 Market Street
Suite 317
Philadelphia, PA 19103
215-568-6190

Attorney for Plaintiff Rachel Rodin

Dated: October 5, 2026